STATE OF FLORIDA v DODGE, et al.
Case Nos. 87-07104 (Consolidated Cases)
County Court, Pinellas County
March 4, 1988

OPINION OF THE COURT

THOMAS B. FREEMAN, County Judge.

### ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE coming on to be heard upon the Defendant's Motion to Dismiss, and the Court having heard argument, having read and reviewed the cases submitted by the Attorney for the City of Clearwater, finds as follows:

1. The Defendants have been charged by the City of Clearwater in violating Ordinance 96 of the Ordinances of the City of Clearwater as a result of their conduct on several different dates and times as set forth more particularly in the allegations contained in the charging documents in the above causes. The consolidated cases vary in factual allegations of "hooting and hollering", mechanical noises, use of sound systems, whistles, stereo systems which result in the creation of noise which a Police Officer of the City of Clearwater determined to be in violation of the Clearwater Ordinances.

2. The Court's review of the cited cases reveals to the Court that the main cases discuss the local government's exercise of police power to regulate the sound trucks and electronically enhanced music.

3. Ordinance 96 of the City of Clearwater prohibits loud and raucous noise. The common dictionary definition of raucous being, "harsh or rough."

4. The Defendant's attorney has argued that since Pinellas County has adopted a decibel basis for violation of its noise ordinance, that the

2

City of Clearwater is required to use the sames standard. The Court does not find that just because a local government has enacted a decibel based ordinance that another local government must do so in the same county. The City of Clearwater has chosen to use a descriptive word test and standard, whereas Pinellas County has chosen to use a scientifically measurable test to determine compliance with the Ordinance.

5. The Court, in considering the evil sought to be precluded by the Legislature, must weigh the interests of the public as a whole and the Defendant's individual rights. The Court must also determine that a person be able to, from reading the Ordinance, predict what type of conduct would be a violation of the Ordinance.

6. These consolidated cases represent a clear example of the conflicts that arise in such an extremely congested urban community that has experienced rapid growth and social change over a relatively short period of time. The factual basis for this controversy appears to result between commercial and residential zones located in close proximity to each other with conflicting views of the inhabitants as to what is socially acceptable. The Florida Supreme Court in *State of Florida v Rudolph S. Sanders,* 339 So.2d 641, in interpreting Florida Statute 877.03 of the Florida Statutes (1975), stated that in disorderly conduct cases, that speech should be protected except when "fighting words" or other words calculated to cause fear or panic in the population occurs. The Second District Court of Appeal, in *Clanton v State of Florida,* 357 So.2d 455, reached the same result in reversing a conviction for disorderly conduct when the Defendant was charged with raising his voice and hollering at police officers. The First Amendment of the United States Constitution protects the speech or communication of a citizen. The Florida Supreme Court in *State of Florida v Rudolph S. Sanders,* 339 So.2d 641, when commenting on the Defendant's enthusiastic selling of newspapers, stated that "the mere existence of statutes purporting to criminalize protected expressions operate as a detriment to the exercise of the rights of free expression." In *Clanton,* the Second District Court of Appeal stated that "lamentably, in today's society, such outbursts are too frequent," but still found that the hollering, even of cuss words in an aggressive manner, were not sufficient according to the Court to allow society's interest to outweigh the "citizen . . . exercising his right to free speech."

7. The Court, in reviewing Florida Statute 317.631, of the law of the State of Florida, 1969, notes that the Legislature, at that time, determined that motor vehicle mufflers that produced "excessive or unusual noise" were prohibited. The Florida Legislature has chosen to replace

**3**

this descriptive word prohibition and test with a scientific test contained in Florida Statute 316.293. The City law enforcement officers are charged with enforcing Florida Statute 316.293 regarding the regulation of motor vehicle noise on the highway by a scientific basis.

8. The United States First Amendment Constitutional rights have been consistently upheld by Appellate Court to be protected. In ty of Houston v Hill, 55 Law Weekly, 4823, June 23, 1987, Justice Breenan stated, "the Constitution does not allow free speech to be made a crime." Ordinance 96 of the City of Clearwater is sufficiently overbroad to allow the punishment, not for criminal conduct, but for speech.

THEREFORE, the Court specifically finds that the interest of the general public is not sufficient to impinge upon the Defendant's right to unambiguously be able to determine what conduct may or may not be criminal when exercising the Defendant's right of free speech and free expression. The focus of the Ordinance does not regulate noise, but regulates certain types of disorderly conduct because of creation of noise by a Defendant.

IT IS THEREFORE,

ORDERED AND ADJUDGED that the Defendant's Motions to Dismiss as consolidated are herein granted and that the Court declares the City of Clearwater Ordinance 96 unconstitutional as to the enforcement of the criminal provisions of said Ordinance as it relates to the facts of the consolidated cases before the Court.

DONE AND ORDERED in Chambers at Clearwater, Florida, this 4th day of March, 1988.

Sec. 95.29. Powers of the city commission.

Upon a determination by the city commission under Section 95.28 that the use, activity or condition which forms the basis of the city manager's report constitutes a nuisance under this article, the city commission shall proceed as follows:

(1) The city commission may consider an agreement with the offending person requiring the person to take certain measures to abate the nuisance. The agreement shall include the measures to be taken by the person and the time period within which such measure must be completed.

(2) If an agreement cannot be reached or an agreement is not followed, the city commission may, by resolution, request the state attorney or the state attorney general to seek judicial relief for abatement of the nuisance pursuant to the provisions of § 60.05, F.S.

(3) The city commission may direct the city attorney to seek judicial relief for abatement of the nuisance. (Ord. No. 4033, § 3, 9-5-85)

Sec. 95.30. Additional remedies.

Nothing contained in this article shall in any way restrict the right to revoke, suspend or deny an occupational license as provided in chapter 71 of the Clearwater Code of Ordinances. The remedies provided in this article for the abatement of nuisances are in addition to any other remedies provided in the Clearwater Code of Ordinances. (Ord. No. 4033, § 3, 9-5-85)

## CHAPTER 96. NOISE*

§ 96.01. Prohibited generally.
§ 96.02. Enumeration.
§ 96.03. Persons responsible.
§ 96.04. Exceptions.

### Sec. 96.01. Prohibited generally.

It shall be unlawful for any person to willfully make, continue or cause to be made or continued any loud and raucous noise, which term shall mean any sound which, because of its volume level, duration and character, annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities within the limits of the city. The term includes the kinds of noise generated by the activities enumerated in section 96.02, except as provided in section 96 04. The term shall be limited to loud and raucous noise heard upon the public streets, in any public park, in any school or public building or upon the grounds thereof while in use, in any church or hospital or upon the grounds thereof while in use, upon any parking lot open to members of the public as invitees or licensees, or in any

*Cross reference—Muffling devices, required for boats, § 114.51.
State law reference—Motor vehicle noise, F.S. § 403.415.

occupied residential unit which is not the source of the noise or upon the grounds thereof, and in any event from a location not less than fifty (50) feet from the source of the noise, measured in a straight line from the radio, loudspeaker, motor, horn or other noise source. (Code 1962, § 11-26; Ord. No. 4348, § 1, 3-5-87)

Sec. 96.02. Enumeration.

The following acts, as limited by section 96.01 and subject to the exceptions provided in section 96.04, are declared to be public nuisances in violation of section 96.01, namely:

(1) *Engines, whistle, pile drivers, etc.—Exhaust.* The discharge into the open air of the exhaust of any steam engine or stationary internal combustion engine except through a muffler or other device which will effectively prevent loud and raucous noises therefrom.

(2) *Same—Pile drivers, etc.* The operation between the hours of 6:00 p.m. and 7:00 a.m. on any day or at any time on Sunday, of any pile driver, steam shovel, pneumatic hammer, derrick, dredge, steam or electric hoist or other appliance, the use of which is attended by loud and raucous noise.

(3) *Same—Blowers.* The operation of any blower or power fan or any internal combustion engine, the operation of which causes loud and raucous noise, unless the noise from such blower or fan is muffled or such engine is equipped with a muffler device sufficient to prevent loud and raucous noise.

(4) *Horns, signaling devices, etc.* The sounding of any horn, whistle or other audible signaling device so as to create a loud and raucous noise.

(5) *Radios, amplifiers, phonographs, etc.* The using, operating or permitting to be played, used or operated any radio, amplifier, musical instrument, phonograph or other device for the producing or reproducing of sound in such manner as to cause loud and raucous noise.

(6) *Sound trucks.* No amplifier or loudspeaker in, upon or attached to a sound truck or other device for amplifying sound shall be operated or permitted to operate within the city for advertising purposes or to attract the attention of the public.

(7) *Yelling, shouting, etc.* Yelling, shouting, whistling or singing at any time or place so as to create a loud and raucous noise between the hours of 10:00 p.m. and 7:00 a.m. on any day.

(8) *Animals, birds, etc.* The keeping of any animal or bird which habitually causes a loud and raucous noise.

(9) *Defect in vehicle or load.* The use of any motor vehicle so out of repair, so loaded or in such manner as to create loud grating, grinding, rattling or other loud and raucous noise or which is not equipped with a muffler in a good working order and in constant operation so as to prevent loud and raucous noise.

(10) *Reserved.*

(11) *Construction or repairing of buildings.* The erection (including excavating), demolition, alteration or repair of any building so as to create a loud and raucous noise other than between the hours of 7:00 a.m. and 6:00 p.m. on any day or at any time on Sunday, except in case of urgent necessity in the interest of public health and safety, and then only with a permit from the building director, which permit may be granted for a period not to exceed three (3) working days or less while the emergency continues and which permit may be renewed for successive periods of three (3) days or less while the emergency continues. If the building director should determine that the public health and safety necessitates the issuance of such a permit and will not be impaired by the erection, demolition, alteration or repair of any building or the excavation of streets and highways within the hours of 6:00 p.m. and 7:00 a.m. or on Sunday, he may grant permission for such work to be done within such hours or within a shorter time period during such hours, upon application being made at the time the permit for the work is issued or during the progress of the work.

(12) *Schools, public buildings, churches, hospitals.* The creation of any loud and raucous noise heard within any school, public building, church or to any hospital, or the grounds thereof, while in use, which interferes with the workings of such institution, or which disturbs or annoys patients in the hospital.

(13) *Reserved.*

(14) *Noises to attract attention.* The use of any drum or other instrument or device to create a loud and raucous noise.

(15) *Reserved.* (Code 1962, § 11-27; Ord. No. 3852, §§ 1, 2, 1-24-85; Ord. No. 3943, § 1, 5-16-86; Ord. No. 4348, § 1, 3-5-87)

## Sec. 96.03. Persons responsible.

Any person, owner, agent or supervisor in charge of operating, ordering, directing or allowing the operation or maintenance of the device or machine creating a noise as prohibited in this chapter, shall be deemed guilty of violating this chapter. (Code 1962, § 11-27)

## Sec. 96.04. Exceptions.

The term "loud and raucous noise" does not include noise or sound generated by the following:

(1) Cries for emergency assistance and warning calls.

(2) Radios, sirens, horns and bells on police, fire and other emergency response vehicles.

(3) Parades, fireworks displays and other special events for which a permit has been obtained from the city, within such hours as may be imposed as a condition for the issuance of the permit.

(4) Activities on or in municipal and school athletic facilities and on or in publicly owned property and facilities, provided that such activities have been authorized by the owner of such property or facilities or its agent.

(5) Fire alarms and burglar alarms, prior to the giving of notice and a reasonable opportunity for the owner or tenant in possession of the premises served by any such alarm to turn off the alarm.

(6) Religious worship activities, including but not limited to bells and organs.

(7) Locomotives and other railroad equipment, and aircraft. (Code 1962, § 11-27; Ord. No. 4348, § 1, 3-5-87)

## CHAPTER 97. RODENT CONTROL

§ 97.01. Definitions.
§ 97.02. Business buildings—To be ratproofed and freed of rats.
§ 97.03. Same—Notice to ratproof; failure to comply with notice; quarantine.
§ 97.04. Same—Method of work; reinfestation.
§ 97.05. Same—Duty of occupants to maintain premises in a ratproof condition; exception.
§ 97.06. Same—Inspections by health officer.
§ 97.07. Same—Duty of owner to install cement floors, etc.
§ 97.08. Unlawful to remove ratproofing from buildings.
§ 97.09. Storage of animal feed.
§ 97.10. Garage, etc., to be stored in receptacles.
§ 97.11. Dumping, etc., garbage, etc., on premises, etc.
§ 97.12. Unlawful accumulation of lumber, boxes, etc.
§ 97.13. New buildings and major repairs to existing buildings.
§ 97.14. Appeal from orders of health officer.

### Sec. 97.01. Definitions.

The following words and phrases, when used in this chapter, shall for the purpose of this chapter, have the meanings respectively ascribed to them as follows:

*Business building* means any structure, whether public or private, that is adapted for occupancy for transaction of business, for rendering of professional services, for amusement, for the display, sale or storage of goods, wares or merchandise, or for the performance of work, or labor, including hotels, rooming houses, office buildings, public buildings, churches, schools, hospitals, penal institutions, stores, theaters, houses, workshops, factories, buildings where people may assemble or congregate, and all outhouses, sheds, barns and other structures on premises used for business purposes.

*Occupant* means the person that has the use of or occupies any business building or a part or fraction thereof whether the actual owner or tenant. In the case of vacant business buildings or any vacant portion of a business building the owner, agent or other person having custody of the building shall have the same responsibilities as if he were the occupant of the building so vacated.